IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES E. BACHMAN, ADELLA A. BACHMAN, ERIC J. BACHMAN, RACHEL A. BACHMAN, MATTHEW R. BACHMAN, and C. ANDREW BACHMAN,<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN Q. BACHMAN, and LEAF SUPREME PRODUCTS, LLC, A Nebraska Limited Liability Co.;<br><br>Defendants. | **8:19CV276**<br><br>**MEMORANDUM AND ORDER** |

This case is before the court of the parties' cross discovery motions (Filing Nos. 108 and 115). Defendants Leaf Supreme Products, LLC and John Q. Bachman (hereafter "Defendants") have moved for a protective order limiting the scope of the Requests for Admission ("RFAs") and Interrogatories previously served by the Plaintiffs. Plaintiffs James E. Bachman, Adella A. Bachman, Eric J. Bachman, Rachel A. Bachman, Matthew R. Bachman and C. Andrew Bachman (hereafter "Plaintiffs") then filed a competing motion to compel – asking the court to require Defendants to respond to the RFAs, Request for Production of Documents ("RFPs"), and Interrogatories as requested. Also before the court is Defendants' Motion to Amend (Filing No. 111), which requests leave of court to amend their answer to assert additional claims and defenses.

Being fully advised, the court will grant in part and deny in part the motions for protective order and to compel and will grant the motion for leave to amend.

BACKGROUND

Defendant Leaf Supreme is a Nebraska limited liability company. It manufactures a type of "guard" meant to alleviate clogging (from leaves and other debris) in rain gutters. Defendant John Q. Bachman is a member and majority owner of Leaf Supreme. Plaintiffs have been Leaf Supreme's only employees. They claim that, from October 1, 2016 to the present, they have not been paid any wages, in violation of federal law. Neither Plaintiffs nor Leaf Supreme kept records of Plaintiffs' hours worked. (See generally, Filing No. 101).

Plaintiffs' federal claims arise under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.[1] Plaintiffs originally moved for summary judgment on the FLSA claims on August 6, 2019. (Filing No. 27). The court denied that motion, without prejudice to reassert after sufficient discovery.[2] (Filing No. 55). Later, during the initial planning conference, Defendants asserted this court lacked federal question jurisdiction. Specifically, Defendants question whether there is evidence supporting the FLSA requirements set forth in 29 U.S.C.A. § 206. The court allowed limited discovery on the jurisdictional issue and set a deadline for dispositive motions addressing the issue of federal subject matter jurisdiction. (Filing Nos. 58 and 59).

The parties conducted their limited discovery, and Defendants moved for summary judgment on jurisdictional grounds. (Filing No. 76). The court found that federal jurisdiction was proper under the FLSA and denied the motion. (Filing No. 101). Concurrently, Plaintiffs filed motions to dismiss and for partial summary

---

[1] There are ancillary state law claims alleged. However, because the relief and factual basis is largely duplicative of the FLSA claims discussed here, the court need not substantively address the state law claims further in order to render an order on these discovery and pleading issues.

[2] In addition to the early summary judgment motion, the court has also previously denied seven motions for injunctive relief (requesting for both temporary restraining orders or preliminary injunctions) filed by the various Plaintiffs, (See Filing Nos. 2, 7, 8, 9, 14, 16, and 51).

judgment, (Filing Nos. 82 and 84), claiming that Defendants' affirmative defenses were improper. The court denied those motions as premature, pending discovery on the merits. (Filing No. 101).

After the court resolved the above dispositive motions, the undersigned conducted another discovery planning conference with the parties. Thereafter, the court set progression deadlines and the parties began full discovery. (Filing Nos. 103 and 104). Defendants' have not responded to, or have lodged general objections to, certain of Plaintiffs' discovery requests. Defendants move for a discovery protective order, (Filing No. 108), and Plaintiffs have filed a corresponding motion to compel, (Filing No. 115).

Defendants argue that Plaintiffs' First and Second Sets of Requests for Admission are overbroad and harassing. Defendants assert a blanket objection to these requests and ask the court for an order relieving them from the duty to provide specific admissions or denials to the 299 requests propounded. (Filing No. 108). Plaintiffs objected to Defendants' request for protective order and filed a motion to compel their response to the RFAs. (Filing Nos. 112 and 115). There is also a dispute regarding Defendants' responses to certain Interrogatories and Requests for Production. While not entirely clear, it appears that the Interrogatories currently in dispute are Nos. 4-8, and Plaintiffs demand a supplemental response to RFP Nos. 1, 4, and 5. (Filing No. 115).

In addition to the discovery motions, Defendants seek leave of court to amend their answer to the First Amended Complaint. (Filing No. 111). Plaintiffs oppose the request, arguing that the proposed additional counterclaims and defenses are legally impermissible in this FLSA action.

ANALYSIS

I.  Cross Motions to Compel and for Protective Order[3]

Given the dual discovery motions, this case presents an unusual standard of review. On their motion for protective order, Defendants, as the moving parties, "bear[ ] the burden to 'show the necessity of [the protective order's] issuance, which contemplates a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" Kozlov v. Associated Wholesale Grocers, Inc., 2014 WL 4534787, at *2 (D. Neb. Sept. 11, 2014) (quoting Gen. Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1212 (8th Cir.1973)). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

On the motion to compel, Plaintiffs are the moving parties and must make a threshold showing that requested information is relevant to the claims or defenses alleged. ACI Worldwide Corp. v. Mastercard Techs., LLC, 2015 WL 4249760, at *1 (D. Neb. July 13, 2015). If they do so, the burden shifts to Defendants, as the responding parties, to prove their "objections are valid by providing specific explanations or factual support as to how each discovery request is improper." Whittington v. Legent Clearing, LLC, 2011 WL 6122566, * 3 (D. Neb. Dec. 8, 2011).

---

[3] In opposition to Plaintiffs' motion to compel, Defendants argue that Plaintiffs' motion should be denied for failure to comply with this court's rules regarding discovery disputes. While Defendants are correct that Plaintiffs did not certify that they had attempted to resolve this issue and did not contact the court to confer on these issues prior to formal motion practice, Defendants also failed to seek a court conference prior to moving for a protective order. More importantly, based on past conferences in this case, the court is not convinced a discovery conference would have resolved all or even part of the issues raised. So, in the interest of judicial economy, the court will take up the substantive issues presented on these motions even though the parties failed to comply with the court's procedures.

The standards will be applied as appropriate to each set of discovery requests.

a. Requests for Admission

Fed. R. Civ. P. 36 allows a party to serve a written request to admit "the truth of any matters within the scope of 26(b)(1) relating to facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1). "Requests for admissions are not principally discovery devices." Safeco of America v. Rawstron, 181 F.R.D. 441, 445 (C.D.Ca.1998) (citation omitted). In theory, Rule 36 "presupposes that the party proceeding under it knows the facts or has the document and merely wishes its opponent to concede their genuineness." Id. The rule was "designed as a device by which at least some of the material facts of a case could be established without the necessity of formal proof at the trial." Brentwood Equities, Inc. v. Taco Maker, Inc., 2015 WL 5883325, at *1 (D. Utah Oct. 8, 2015) (internal citation omitted).

"[T]he Federal Rules of Civil Procedure ... [do not set] a presumptive limit on the number of requests for admission that may be propounded by a party." Wilson v. Jackson Nat'l Life Ins. Co., 2017 WL 10402569, at *2 (M.D. Fla. Feb. 13, 2017) (quoting Layne Christensen Co. v. Purolite Co., 2011 WL 381611, at *4 (D. Kan. Jan. 25, 2011)). However, "admissions should not be of such great number and broad scope as to cover all the issues [even in] a complex case, and [o]bviously ... should not be sought in an attempt to harass an opposing party." Wilson, 2017 WL 10402569, at *2 (quoting Wigler v. Elec. Data Sys. Corp., 108 F.R.D. 204, 206–07 (D. Md. 1985) (citations and quotations omitted). Requests are improper if they amount to "an attempt to pick every nit that a squad of lawyers could possibly see[.]" U.S. v. Medtronic, Inc., 2000 WL 1478476, at *4–5 (D. Kan. July 13, 2000) (quotations omitted).

Both parties agree that the RFAs at issue can be bifurcated into two categories: Request Nos. 1-55 and Request Nos. 56-299. In their brief in support of the motion to compel, Plaintiffs claim that Request Nos. 1-55 are "standard requests, relating directly to the facts of the case or defenses raised by the Defendants." (Filing No. 116 at CM/ECF p. 1). Request Nos. 56-299, Plaintiffs assert, "relate to funds the <u>Plaintiffs</u> contributed to Leaf Supreme Products, LLC." (Id.) (emphasis added).

Defendants make no argument, either in their brief in support of their request for protective order or in opposition to the motion to compel, that addresses the substance of Request Nos. 1-55.[4] Defendants' blanket objection to those requests is that Defendants should not have to answer <u>any</u> RFAs because Plaintiffs abused Rule 36 by serving a harassing number of requests, in total. And other than making conclusory statements that their requests are substantively relevant and proper in scope/number, Plaintiffs also do not specifically address Request Nos. 1-55.

As to Request Nos. 56-299, Defendants posit the following specific grievances (in addition to their general numerosity objection):

> 1) Requests 5[6] through 299 read primarily like depositions questions as each request asks Defendants to refer to documents sent with the requests. Thereafter, there are follow-up requests once the document is identified. These begin at Request for Admission 66 and continue throughout until Request 298.
>
> 2) Several of the requests deal with documents and issues that are not relevant to the issues of this case. For example, Request no. 64, 297, 31, 32 reference an "MOU", its execution

---

[4] There are two exceptions: Request Nos. 31 and 32, which Defendants lump into their relevancy argument related to Request Nos. 64 and 297.

>    and its enforceability. There is no MOU attached to the Requests and there is no explanation of what Plaintiffs mean. Defendants are aware of an "MOU" (Memorandum of Understanding") that is the subject of litigation pending in the District Court of Nebraska, Leaf Supreme Products, LLC v. James and Adella Bachman, CI 19 - 4497. Such is not relevant to these proceedings.
>
>    3) A number of requests refer to documents that are heavily redacted. Requests following these heavily redacted records stem from those records. It is not possible to answer these requests without being able to read the unredacted documents. (See Ex. F, Aranza Declaration). The redacted documents are found at IOE 58, 61, 63, 126, and 127. Even with those records that are not redacted, it is impossible to answer Requests 55 through 299 without being able to read and understand the redacted documents. As long as portions of these records are redacted, these requests cannot be answered.
>
>    4) Almost all of the Requests from number 56 through 299 cannot be answered as Plaintiffs were in possession of the records of Defendant Leaf Supreme throughout the time that Leaf Supreme was conducting business. In fact, it was necessary for Defendant John Bachman and Leaf Supreme to obtain an injunction to take possession of the business and of the premises. (Aranza declaration, Ex. E). All of these checks were written by either James, Adella, or Eric Bachman. It will be necessary to conduct discovery with them before these requests can be answered.

(Filing No. 109 at CM/ECF pp. 2-3). Plaintiffs claim that Request Nos. 56-299 are proper because they seek admissions related to monetary amounts contributed by Plaintiffs to Leaf Supreme. Plaintiffs claim that the amount contributed is relevant because it undercuts Defendants' theory that Plaintiffs made unauthorized withdrawals from Leaf Supreme in an amount that exceeded Plaintiffs' monetary contributions. Plaintiffs do not address Defendants' contentions about the MOU, the redactions, or access to the documents.

Under some circumstances, 299 RFAs may be permissible. Courts in other districts have allowed parties to propound RFAs in similar numbers. See, e.g., Sommerfield v. City of Chicago, 251 F.R.D. 353, 354 (N.D. Ill. 2008). However, as other courts have uniformly made clear, the number of RFAs must be reasonably proportionate to the needs of the litigation. Stokes v. Interline Brands Inc., 2013 WL 6056886, at *2 (N.D. Cal. Nov. 14, 2013) (number of requests propounded was unreasonable); Murray v. U.S. Dep't of Treasury, 2010 WL 3464914, at *2 (E.D. Mich. Sept. 1, 2010) (same).

The court is unconvinced that 299 requests are necessary here, given the fairly limited issues remaining in this case. Although the extensive, previous motion practice might tell a different story, this case is a basic FLSA wage and hour dispute.

The court has reviewed all of Plaintiffs' RFAs, and they run the spectrum: some are reasonable, but many others ask for admission of insignificant, minor details or call for pure conclusions of law. See Mitchell v. Yeutter, 1993 WL 139218, at *1 (D. Kan. Jan. 12, 1993) (disallowing RFAs that "focus on small details, and not on major factual issues" of the case); Vernet v. Serrano-Torres, 2013 WL 12350557, at *3 (D.P.R. Jan. 30, 2013) (collecting cases that hold that RFAs may not be used to establish conclusions of law).

Requests for admission cannot be a complete substitute for formal and informal discovery in a case. Yeutter, 1993 WL 139218, at *1. Many of Plaintiffs' requests appear to be just that. For example, "First Set of Admissions, Request 5)" asks Defendants to "[a]dmit that the Defendants knew that Plaintiffs were entitled by law to be paid pursuant to the FLSA or showed reckless disregard that the Plaintiffs were not eligible to be paid pursuant to the FLSA." (Filing No. 115-3 at

CM/ECF p. 2). This type of request is fundamentally flawed. First, it does not seek an admission of fact or the application of a fact to the law – it improperly calls for a pure conclusion of law. Lakehead Pipe Line Co. v. American Home Assur. Co., 177 F.R.D. 454, 458 (D. Minn. 1997) ("a request for admission which involves a pure matter of law, that is, requests for admissions of law which are related to the facts of the case, are considered to be inappropriate."). Moreover, this request essentially asks Defendants to concede the core disputed point in this lawsuit. That too is an improper use of Rule 36. Asarco LLC v. Union Pac. R.R. Co., 2016 WL 1755241, at *12 (D. Idaho May 2, 2016) ("requests for admission should not be used to establish facts which are obviously in dispute").

Many of the requests in the first group – Request Nos. 1-55 – are similarly flawed. For example, Request Nos. 5, 9, 10, 13-14, 24-30, 40-42 call explicitly for legal conclusions. And that listing is demonstrative, not exhaustive. RFAs that simply parrot the complaint, or call for disputed conclusions of law, are improper under Rule 36. Asarco, 2016 WL 1755241, at *12.

In addition to requests for legal conclusions, some requests call for admissions related to information that this court has previously addressed and determined to be irrelevant. The parties have previously disputed the relevancy of information related to a certain "Memorandum of Understanding" or "MOU" that forms the basis of a separate, state court action between some of these parties. This court observed then that: "Plaintiffs insist, however, that the MOU is somehow determinative of Plaintiffs' FLSA claims. Plaintiffs have failed to provide any evidence or explanation as to how the MOU affected their employment status or their entitlement to wages previously earned." (Filing No. 23 at CM/ECF p. 5). The court is aware of no newly presented evidence that would alter that previous observation. Requests for Admission related to the MOU (see Request Nos. 31,

32, 64, 65, 66, 67, 73 and 297) would thus appear irrelevant to the claims currently pending in this forum.

Other documents attached to the RFAs are very heavily redacted. (See, e.g., Filing Nos. 115-4 at CM/ECF p. 1 and 115-5 at CM/ECF p. 40). Defendants argue that they cannot effectively admit or deny requests stemming from those documents if they cannot effectively review them first. (Filing No. 109 at CM/ECF pp. 2-3). The court agrees.

Moreover, the majority of the second grouping of requests – Request Nos. 56-299 – appear to be requests for Defendants to admit actions taken by Plaintiffs. Nearly all these requests deal with purported deposits into Leaf Supreme's accounts made by various Plaintiffs. The court is not convinced that is a proper use of Rule 36.[5] And requests that Defendants characterize the payments as "loans" likewise seems improper. None of the records attached to the RFAs appear to reflect the purpose behind any deposit. The lion's share of the documents attached are standard deposit slips and/or copies of checks, which provide no context. (See generally, Filing No. 115-4).

For clarity, the court is not determining whether the records of financial transactions attached to the RFAs are irrelevant. The court finds that even assuming the documents are relevant, the RFAs are improper. The court further notes that given the volume of financial documents at issue, discussions aimed at stipulating to foundation and authenticity of the financial documents would be both the common practice in this forum, and the most expedient and inexpensive course of action. Unfortunately, the litigation history in this case has been blighted by what,

---

[5] Plaintiffs' briefing in support of this argument is predominantly a discussion of the FLSA and its application and history. It does not explain why Defendants should be compelled to respond to Plaintiffs' voluminous discovery.

at times, appears to be personal animus rather than sound strategy. Plaintiffs' copious requests appear to be a symptom of that ongoing malady. When faced with similar case history and voluminous requests for admission, one court recognized:

> [t]he synergy of this litigation, as indicated by these pleadings, borders more on brinksmanship and sharp practice than anything else. Surely, judicial and litigation economy and efficiency, the intended and vital purpose of Requests to Admit, were not promoted by these parties.

Henry v. Champlain Enterprises, Inc., 212 F.R.D. 73, 82 (N.D.N.Y. 2003). The same is true here. Given all the foregoing defects in the Requests as drafted, and the fact that the volume of Requests served is disproportionate to the needs of this case, the court will grant Defendants a protective order as it relates to the RFAs.

    b. Interrogatories

Plaintiffs' motion to compel seeks an order compelling responses to Interrogatory Nos. 4-8. (Filing No. 115). Defendants argue that Plaintiffs exceeded the allowable number of interrogatories, and no additional response is therefore required. In essence, Defendants claim that when a party believes too many interrogatories were served, that responding party can raise a general objection, unilaterally pick and choose which interrogatories to answer, and refuse to answer the rest. The court is not persuaded. "When a party believes that another party has asked too many interrogatories, the party to which the discovery has be[en] propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the [party] waived this objection." Allahverdi v. Regents of Univ. of New Mexico, 228 F.R.D. 696, 698 (D.N.M. 2005). Defendants answered and objected to the interrogatories prior to seeking a protective order. Defendants responded to

Interrogatory Nos. 2-3 and objected to the balance (including Interrogatory No. 1). That tactic is impermissible.

The court has reviewed the remaining interrogatories, and except as to Interrogatory No. 1 (which the parties agree is overbroad and impermissible), Defendants must answer and/or object to each interrogatory individually. If a dispute arises related to those individual responses, the parties must attempt to resolve their dispute informally, and if they cannot resolve the dispute through good faith discussions, they must participate in a discovery dispute conference before undersigned magistrate judge before engaging in formal motion practice.

   c. Requests for Production

Finally, Plaintiffs' motion to compel requests supplemental response to RFP Nos. 1, 4, and 5. Defendants do not address the RFPs either in their brief in support of their request for protective order or in opposition to the motion to compel.

Plaintiffs filed a copy of their document production requests, ([Filing No. 115-1](Filing No. 115-1)). However, the copy provided to the court does not include Defendants' responses to those requests. Presumably, because Plaintiffs only request additional responses to Request Nos. 1, 4 and 5, Defendants previously provided sufficient responses or produced documents sufficient to satisfy the other requests. However, because the parties have not provided the court with Defendants' objections to the RFPs in question, and have not sufficiently briefed the issues, any issues with the RFPs are not properly before the court.

That said, if Defendants have not objected, but also have not produced the documents, they must do so immediately. If Defendants have failed to respond to those requests altogether, they must do so immediately. If Defendants have lodged

objections to those requests, and the parties disagree as to the validity of those objections, the parties must contact the court for a discovery dispute conference to discuss those objections and attempt to resolve those issues.

II. Motion for Leave to Amend

Defendants seek leave to amend their answer to the First Amended Complaint to assert additional defenses and counterclaims. (Filing No. 111) Because the request is made prior to the pleading amendment deadline in the scheduling order (Filing No. 104), the request is governed by the liberal standard in Fed. R. Civ. P. 15.

Under Rule 15(a), "absent a good reason for denial—such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of amendment—leave to amend should be granted." Kozohorsky v. Harmon, 332 F.3d 1141, 1144 (8th Cir. 2003). Plaintiffs claim that Defendants' proposed pleading amendment is futile– alleging that an FLSA case cannot be expanded to include ancillary employment related claims and must be confined to evaluation of the wage payments in dispute. (Filing No. 112 at CM/ECF p. 2) (citing Tennessee Coal Iron & R. Co. v Muscoda Local No. 123, 321 U.S. 590, 602 (1944)).

Futility is a valid basis for denying leave to amend. U.S. ex rel. Lee v. Fairview Health Sys., 413 F.3d 748, 749 (8th Cir. 2005) (citing Moses.com Securities, Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1065 (8th Cir.2005)). An amendment is futile if it is clearly insufficient or frivolous on its face. See, e.g., Perez v. World Fin. Grp., 2019 WL 6698178, at *1 (D. Ariz. Dec. 9, 2019) ("[L]eave to amend should be denied as futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and

sufficient claim or defense."); In re Senior Cottages of Am., LLC, 482 F.3d 997, 1001 (8th Cir. 2007) ("when a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion").

The court will not reach the merits of the futility arguments here and declines to make a legal determination as the sufficiency of the additional claims. Plaintiffs have previously moved to strike (and for summary judgment on) Defendants' affirmative defenses based on similar reasoning. This court, when denying that request in Plaintiffs' most recent motion for summary judgment, noted that there are fact questions that need to be resolved prior to a determination as to which defenses are proper in this case. The court determined that

> [i]t is true "that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981). Accordingly, if Defendants argue that Plaintiffs waived rights under the FLSA to which they were otherwise entitled, such a defense would be invalid. However, in certain circumstances, courts have allowed defendants to assert equitable defenses in FLSA actions. See Bailey v. TitleMax of Georgia, Inc., 776 F.3d 797, 804 (11th Cir. 2015). Absent discovery on these issues, the Court cannot determine whether such defenses are applicable.

(Filing No. 101 at CM/ECF pp. 13-14). Discovery might also clarify whether, on the specific facts presented here, Defendants can assert certain counterclaims. Other courts have noted instances where similar counterclaims have been allowable in an FLSA action. Ahle v. Veracity Research Co., 641 F. Supp. 2d 857, 863 (D. Minn. 2009); Lombardi v. City of Cornersville, 2007 WL 190324, at *1–2 (M.D.Tenn. Jan. 22, 2007).

Perhaps Plaintiffs will, after the close of discovery, have a valid basis for dismissal of Defendants' additional claims. But those questions are better suited for full briefing on a substantive motion. This is underscored by the court's previous admonishment to Plaintiffs to desist with the piecemeal litigation of Defendants' claims and defenses, to finish discovery, and to litigate those issues on a consolidated motion. (Filing No. 101 at CM/ECF p. 14).

Aside from the futility argument addressed above, none of the other Rule 15 bases for denying Defendants' motion for leave are present in this case. The Eighth Circuit has acknowledged that prejudice may be present "when late tendered amendments involve new theories of recovery and impose additional discovery requirements...[.]" Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir.1998). Even still, the court must determine whether allowing the amendment would require "significant additional resources [for] discovery and trial preparation" or would "significantly delay resolving the dispute." Jewish Fed'n of Lincoln, Inc. v. Rosenblatt, 2018 WL 6171816, at *1 (D. Neb. Nov. 26, 2018) (citing Long v. Wilson, 393 F.3d 390, 400 (3rd Cir. 2004)) (emphasis added). No such prejudice or delay exists here.

The court will allow Defendants to amend their answer as requested.

Accordingly, IT IS ORDERED:

1) Defendants' Motion for Protective Order (Filing No. 108) and Plaintiffs' Motion to Compel (Filing No. 115) are resolved as follows:

   a. Defendants' Motion for Protective Order is granted as to Plaintiffs' First or Second Set of Requests for Admission, and accordingly, Plaintiffs' Motion to Compel answers to those requests is denied.

    b. Defendants' Motion for Protective Order is denied as to Plaintiffs' Interrogatory Nos. 4-8, and accordingly, Plaintiffs' Motion to Compel answers to those interrogatories is granted. On or before **December 17, 2020**, Defendants shall provide supplemental responses to Plaintiffs' Interrogatory Nos. 4-8, as outlined herein.

    c. Plaintiffs' Motion to Compel responses to Plaintiffs' Requests for Production Nos. 1, 4 and 5 is granted. To the extent Defendants have failed to respond to Plaintiffs' Requests for Production of Documents Nos. 1, 4, or 5, Defendants shall answer or object to those requests by **December 17, 2020**. To the extent Defendants have answered those requests but not produced responsive documents, Defendants must make that production by **December 17, 2020**.

    d. The parties are required to informally attempt resolution of any additional discovery dispute. If informal resolution cannot be achieved, the parties shall contact the chambers of the undersigned magistrate judge on or before **January 19, 2021** to schedule a telephonic discovery conference. No additional discovery motion shall be filed absent consent of the court.

2) Plaintiffs' Motion to Strike their Motion to Compel (Filing No. 118) is denied as moot.

3) Defendants' Motion for Leave to Amend (Filing No. 111) is granted. Defendants shall file their amended answer, a copy of which is attached to their motion, on or before November 24, 2020.

Dated this 18th day of November, 2020.

                                      BY THE COURT:

                                      *s/ Cheryl R. Zwart*
                                      United States Magistrate Judge