IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES E. BACHMAN, ADELLA A. BACHMAN, ERIC J. BACHMAN, RACHEL A. BACHMAN, MATTHEW R. BACHMAN, and C. ANDREW BACHMAN,<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN Q. BACHMAN, and LEAF SUPREME PRODUCTS, LLC, A Nebraska Limited Liability Co.;<br><br>Defendants. | 8:19CV276<br><br>**MEMORANDUM AND ORDER** |

Currently pending before the court are: (1) Plaintiffs' Motion to Compel (Filing No. 151); (2) Plaintiffs' Motion for Extension of Time to File a Responsive Pleading (Filing No. 153); (3) Plaintiffs' Motion to Amend the Complaint (Filing No. 154); (4) Defendants' Motion for a Protective Order (Filing No. 156); (5) Defendants' Motion to Strike Plaintiffs' Answer to the Counterclaim (Filing No. 162); and Plaintiffs' Duplicate Motion to Compel (Filing No. 166). The foregoing motions are granted in part and denied in part, as discussed hereinbelow.

BACKGROUND

The motion practice in this case has been extensive.

At the outset of this litigation, on August 6, 2019, Plaintiffs moved for an early summary judgment. (Filing No. 27). The court denied that motion, without prejudice

to reassert after the parties were able to conduct discovery. (Filing No. 55). Defendants then asserted this court lacked federal question jurisdiction. Specifically, Defendants questioned whether there was evidence supporting the FLSA requirements set forth in 29 U.S.C.A. § 206. The court allowed limited discovery on the jurisdictional issue and set a deadline for dispositive motions addressing only the issue of federal jurisdiction. (Filing Nos. 58 and 59).

The parties conducted their limited discovery, and Defendants moved for summary judgment on jurisdictional grounds. (Filing No. 76). The court found that federal jurisdiction was proper under the FLSA and denied the motion. (Filing No. 101). Concurrently, Plaintiffs filed motions to dismiss and for partial summary judgment, (Filing Nos. 82 and 84), claiming Defendants' affirmative defenses were improper. The court denied those motions as premature, pending discovery on the merits. (Filing No. 101). In addition to the early summary judgment motions, the court has also previously denied seven motions for injunctive relief (requesting both temporary restraining orders or preliminary injunctions) filed by the various Plaintiffs, (See Filing Nos. 2, 7, 8, 9, 14, 16, and 51).

After the court resolved the above motions, the undersigned conducted a discovery planning conference with the parties. Thereafter, the court set progression deadlines and the parties began full discovery. (Filing Nos. 103 and 104). In the time intervening, the court has resolved numerous discovery disputes, (Filing Nos. 122, 135 and 148), as well as a motion for leave to amend Defendants' answer, an objection to that motion, and two motions to reconsider, (Filing Nos. 111, 123, 125, 130). Now, the parties have filed six additional requests for relief, asking to amend a pleading, to extend a response period, to compel discovery, to strike allegations, and for a protective order.

FLSA actions are not typically considered complex litigation. Yet, more than a year into this litigation, discovery is not concluded, and even the scope of the pleadings remains in dispute. The court has spent an inordinate amount of time refereeing procedural and discovery issues for these litigants – often based on Plaintiffs' repetitious and recycled arguments. The court is hopeful that, after resolution of the instant motions, this FLSA action can begin progressing as it should.

The current portfolio of pending motions is addressed below.

## ANALYSIS

I.  Motion for Leave to Amend

Citing Fed. R. Civ. P. 15, Plaintiffs seek leave to file an amended complaint "related to the Defendants' Counterclaim." (Filing No. 154 at CM/ECF p. 1). Plaintiffs did not file a contemporaneous brief, and their motion does not contain further argument in support of their request. After Defendants filed a response (Filing No. 158), Plaintiffs filed a "reply brief in opposition," (Filing No. 160).

Failure to file a supporting brief may be treated by the court as abandoning "in whole or in part that party's position on the pending motion." NECivR 7.1. And, [i]f the moving party does not file an initial brief, it may not file a reply brief without the court's leave." NECivR 7.1(c)(3). Thus, Plaintiffs' motion is subject to denial on procedural grounds alone. However, consistent with Rule 1, rather than deny Plaintiffs' motion to amend solely because they failed to brief the motion as required under the court's published local rules, I will also address the motion under Rules 15 and 16 of the Federal Rules.

In their reply, Plaintiffs briefly state the grounds this court should consider when deciding whether to allow a pleading amendment. However, the reply brief provides no analysis of that standard as applied to these facts and instead launches into a discussion of the FLSA damages provisions and Plaintiffs' theory as to how those provisions might apply here. Plaintiffs' request to amend has fallen victim to the same defect that has plagued so many of their previous motions in this case. Instead of focusing on the relief they are requesting on the specific motion before the court, they argue the merits of the entire case. As a result, they have often failed to grasp (or even address) the relevant law as it relates to their repeated requests for discovery and procedural relief.

Here, Plaintiffs ask for leave to amend their complaint three and a half months after the deadline for moving to amend pleadings and add parties. (Filing No. 104). Plaintiffs do not address the timing of their motion or indicate that they understood that the timing would have any effect on the relief they are now requesting. "[T]here is no absolute right to amend [pleadings]." Baptist Health v. Smith, 477 F.3d 540, 544 (8th Cir. 2007). And the standard varies dependent on the motion's timing. Compare Fed. R. Civ. P. 15(a) ("The court should freely give leave [to amend] when justice so requires."), with Fed R. Civ. P. 16(b) ("A schedule may be modified only for good cause…[.]").

The Eighth Circuit discussed the differing standards at length in Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir.2008). Sherman explained that

> [t]he interplay between Rule 15(a) and Rule 16(b) is settled in this circuit. In Popoalii v. Correctional Med. Servs., 512 F.3d 488, 497 (8th Cir.2008), we stated that "[i]f a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule." 512 F.3d at 497 (citing Rule 16(b) (emphasis added)). Moreover, we said so in the context of a discussion of the Rule 15 amendment standard, unmistakably concluding that Rule 16(b)'s

4

good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a). Id.

Sherman, 532 F.3d at 716 (emphasis in original). Thus, where the movant's motion to amend is filed after the deadline for amendment of pleadings in a scheduling order, the court is required to apply the "good cause" standard of Rule 16(b). Id. ("To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) would render scheduling orders meaningless and effectively ... read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." (citation omitted)).

Plaintiffs have not met that heightened standard. "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements...., [but the] 'existence or degree of prejudice to the party opposing the modification' and other factors may also affect the decision." Pilgrim v. Brumbaugh & Quandal, P.C., No. 8:13CV191, 2014 WL 12605518, at *1 (D. Neb. May 5, 2014) (quoting Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001)). But, "generally, [the court] will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." See Bradford, 249 F.3d at 809.

The deadline to amend pleadings was October 1, 2020. Plaintiffs' motion for leave to amend was not filed until January 20, 2021. And, as discussed above, Plaintiffs provide no explanation for their delay. They may argue that they were alerted to the need to file an amended pleading only after they reviewed the allegations contained in Defendants' counterclaim. However, Defendants' proposed, amended answer (including the counterclaim) was attached to their motion for leave to amend on October 1, 2020. The undersigned granted Defendants' motion to amend their answer and assert their counterclaim on

November 18, 2020, and Judge Buescher affirmed that order (over Plaintiffs' objection) on January 7, 2021. If Plaintiffs were waiting for resolution of their objection prior to asserting their request for leave to amend, they did so at their own peril. The deadline to amend pleadings had long expired at that point, and Plaintiffs took no steps to extend it or to otherwise preserve their rights.[1]  In other words, they have not demonstrated the necessary diligence to allow amendment under Rule 16.

Moreover, after review of the additional allegations in Plaintiffs' proposed amended complaint, the court cannot identify any facts or potential legal theories that would have come to light only after Defendants filed their amended answer and counterclaim. The new allegations are largely related to purported tax obligations and the actions taken (or not taken) by the various Plaintiffs and Defendants in 2016, 2017, 2018 and 2019. For example, the allegations in paragraphs 18-19 are related to different tax documents allegedly prepared (or not prepared) by Plaintiff Adella Bachman while she worked at Leaf Supreme. (Filing No. 154-1 at CM/ECF p. 10). Plaintiffs provide the court with no explanation as to why those assertions could not have been made earlier. And, "[w]here there has been 'no change in the law, no newly discovered facts, or any other changed circumstance . . . after the scheduling deadline for amending pleadings,' then [a court] may conclude that the moving party has failed to show good cause." Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 948 (8th Cir. 2012) (quoting Sherman, 532 F.3d at 718).

---

[1] On January 19, 2021, the court amended progression deadlines at Defendants' unopposed request. In the order extending those progression dates, the court explicitly notes that all "unexpired" deadlines would be extended. (Filing No. 152). Plaintiffs did not make any request to include a pleading amendment extension in that amended progression order nor did Plaintiffs timely object to the court's entry of an order excluding an extension of that deadline.

Plaintiffs' new assertions are not based on any change in law, newly discovered facts, or the like, and they do not form a legally sufficient basis for this late-requested amendment, especially when coupled with Plaintiffs' lack of diligence in making the request. Plaintiffs have not met their burden and their motion for leave to amend (Filing No. 154) will be denied.[2]

II. Motion to Strike Answer to Counterclaim

On January 28, 2021, Plaintiffs filed an answer to Defendants' counterclaim.[3] On February 5, 2021, Defendants filed a motion to strike Plaintiffs' answer pursuant to Fed. R. Civ. P. 12(f). Defendants argue that Plaintiffs' answer is "a rambling diatribe" that muddies the issues and goes well beyond the appropriate scope of a responsive pleading. (Filing No. 163 at CM/ECF p. 3).

Fed R. Civ P. 12(f) allows the court, on its own or on a party's motion, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." See Fed. R. Civ. P. 12(f). Rule 12(f) is "permissive" and grants the court liberal discretion when ruling on motions to strike. Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000). However, courts view motions to strike with disfavor because striking a pleading is an "extreme measure." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007). When moving to strike, "a [movant] must show that the allegations being

---

[2] In addition to their general request for leave to file a pleading amendment, Plaintiffs' motion asks the court for permission to consolidate their amended complaint with their answer to Defendants' counterclaim. Put differently, Plaintiffs ask the court for permission to file a hybrid document that would act as both a complaint and as an answer. The answer is "No." The federal rules do not authorize a dual complaint/answer to counterclaim pleading. Moreover, to draft this opinion, the court invested hours to untangle the docket of prior motion practice. Allowing the procedural irregularity of dual purpose pleading will cause even more confusion. The portion of Plaintiffs' motion for leave which requests permission to file a consolidated amended complaint and answer to a counterclaim is denied.

[3] Plaintiffs' motion for extension of time to file an answer to the counterclaim (Filing No. 153) will therefore be denied as moot.

7

challenged…are 'so unrelated to the [ ] claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party.'" Sobba v. Elmen, 462 F. Supp. 2d 944, 946 (E. D. Ark. 2006) (internal citation omitted). "[T]he rule's purpose is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case." Williams v. Averitt Express, No. 8:15CV464, 2016 WL 589861, at *2 (D. Neb. Feb. 11, 2016).

There is no question that Plaintiffs' answer is both prolix and redundant. The first 16 paragraphs of the answer are nearly a verbatim restatement of the operative pleading, and paragraphs 17-25 are a restatement of the new allegations included in Plaintiffs' proposed amended complaint. (Filing No. 155). Plaintiffs' answer spends 11 full pages reciting factual contentions before even addressing the counterclaim at all. (Id).

The moving party bears the burden of proving that the challenged material should be stricken. Hockenbury v. Hanover Insurance Company, 2016 WL 552967, *2 (W.D. Okla. 2016). And courts have disagreed on whether a showing of redundancy alone is a sufficient basis for striking a pleading. Some courts have held that where a pleading merely restates an issue already before the court, it should be stricken. See United States v. Zanfei, 353 F. Supp. 2d 962, 965 (N.D. Ill. 2005). Other courts, though, have declined to grant Rule 12(f) motions on the sole basis that they are redundant of previously pleaded issues. See Regions Bank v. Commonwealth Land Title Ins. Co., 2012 WL 5410609, *4 (S.D. Fla. 2012); Iron Mountain Sec. Storage Corp. v. American Specialty Foods, Inc., 457 F. Supp. 1158, 1161-62 (E.D. Pa. 1978).

The undersigned has thoroughly reviewed the docket and relevant law, and on balance, finds that paragraphs 1-25 of Plaintiffs' answer to the counterclaim should be stricken.

Paragraphs 1-16 are just an unnecessary recitation of the facts pleaded in Plaintiffs' operative Complaint. Courts have stricken similar pleadings when they are "needlessly repetitive," Alaska Logistics, LLC v. Newtok Vill. Council, 357 F. Supp. 3d 916, 930 (D. Alaska 2019), or in an effort to remove "unnecessary clutter from the case," Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir.1989).

As to Paragraphs 17-25, the analysis is similar but somewhat distinct. As discussed above, Plaintiffs have requested leave to amend their complaint, which as previously discussed, will be denied. Instead of specifically responding to the allegations in the counterclaim, Paragraphs 17-25 of Plaintiffs' answer to the counterclaim are cut and pasted from their untimely proposed amended complaint. Allowing those allegations to stand in the form of a counterclaim answer would provide a back door means of raising allegations that, under Fed. R. Civ. P. 16(b)(4), must be stricken as untimely. The court will deny Plaintiffs' attempt to raise such allegations under the guise of answering the counterclaim, and thereby circumvent the pleading amendment rules.

Plaintiffs argue that these new allegations are necessary to support their affirmative defenses. (Filing No. 164 at CM/ECF p. 1). However, this district has previously analyzed the pleading standard for affirmative defenses, finding the standard articulated by the Supreme Court in Twombly and Iqbal does not apply. Infogroup, Inc. v. DatabaseLLC, 95 F. Supp. 3d 1170, 1192 (D. Neb. 2015) (discussing Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly,

9

550 U.S. 544 (2007) and determining that those holdings "should not apply in the context" of affirmative defenses).

Rather, affirmative defenses "need not be articulated with any rigorous degree of specificity and may be sufficiently raised for purposes of Rule 8 by their bare assertion." Infogroup, 95 F. Supp. 3d 1170, 1193 (D. Neb. 2015) (citing Zotos v. Lindbergh Sch. Dist., 121 F.3d 356, 361 (8th Cir.1997)). Rule 8(b)(1) requires that answering parties "state in short and plain terms [their] defenses to each claim" and to "admit or deny the allegations asserted against [them] by an opposing party." Fed. R. Civ. P. 8(b)(1)(A)-(B) (emphasis added). Plaintiffs' inclusion of every allegation they previously made (or propose to make) is unnecessary to accomplish those ends.[4]

The intent of Rule 12(f) is to "minimize delay, prejudice, and confusion." J & J Sports Prods., Inc. v. Ehegartner, 2018 WL 2869023, at *1 (D. Neb. Apr. 25, 2018). As previously outlined, the pretrial litigation practices in this case have produced a Gordian knot. (Filing No. 131 at CM/ECF p. 2). The issues are often confused, and the docket has become a clutter of redundancies. Plaintiffs' inclusion of their entire proposed amended complaint within the confines of their counterclaim answer would further muddy the waters while ignoring the good cause mandate of Rule 16(b). This case presents one of the rare instances where the court should, and will, exercise its discretion to strike portions of a pleading. There is no utility in including these factual allegations in the answer and they pose a risk of confusion.

Defendants' motion to strike paragraphs 1-25 of Plaintiffs' Answer, (Filing No. 162), is granted.

---

[4] The undersigned makes no finding as to the sufficiency of any of Plaintiffs' defenses.

III.  Motions to Compel[5] and for Protective Order

On January 18, 2021, Plaintiffs filed a motion to compel, requesting an order compelling Defendants to respond to Plaintiffs' Requests for Production Nos. 1, 4 and 5. Plaintiffs assert in their motion that "[a]s of the date of this motion, the Defendants have not produced these documents nor have they filed an objection as direct [sic] by the Court." (Filing No. 151 at CM/ECF p. 2). Plaintiffs argue that Defendants are in violation of this court's November 18, 2020 order resolving the parties' previous discovery dispute. Plaintiffs claim that the court previously compelled Defendants to produce documents pursuant to the above requests and that Defendants have refused to produce the disputed documents in contravention of that order.

Plaintiffs' argument is not supported by the clear language and reasoning of the court's previous order. In the November 18, 2020 order, the court noted that neither party had properly briefed the issues as they related to Requests for Production Nos. 1, 4, and 5. (Filing No. 122 at CM/ECF p. 13). And neither Plaintiffs nor Defendants provided a copy of the disputed discovery responses to the court. (Id). Thus, as the November 18, 2020 order noted at the time, the court could not substantively evaluate discovery responses it had not seen. The court stated that any deficiencies in the responses to requests for production were not properly before the court and that the court would not reach the merits of the

---

[5] On March 15, 2021, without leave, Plaintiffs filed a second motion to compel (in clear contravention of the local rules and my repeated reminders of the same). The new motion restates the relief requested in Plaintiffs' previous motion, (Filing No. 151). In explanation for the duplicative filing, Plaintiffs complain that the court has not resolved the currently pending battery of motions quickly enough, and they apparently believed another motion was necessary in order to obtain a ruling on their discovery dispute. (Filing No. 166). Plaintiffs' motion (Filing No. 166) is denied, both for failure to comply with the rules and for the same substantive reasons supporting denial of their original motion.

parties' dispute. Without knowing the exact nature of the dispute, the court advised the parties that

> [i]f Defendants have not objected [to Request Nos. 1, 4, and 5], but also have not produced the documents, they must do so immediately. If Defendants have failed to respond to those requests altogether, they must do so immediately. If Defendants have lodged objections to those requests, and the parties disagree as to the validity of those objections, the parties must contact the court for a discovery dispute conference to discuss those objections and attempt to resolve those issues.

(Filing No. 122 at CM/ECF pp. 13-14). As is clear from the passage above, the court did not compel Defendants to produce documents. The previous order simply directed Defendants to serve responses or objections to outstanding discovery, to the extent that they had not already done so. And if an objection was raised and disputed, the court was clear: an additional conference and motion were necessary prior to an order compelling production.

The court heard nothing related to these document requests in the intervening months. In fact, the court held a discovery dispute conference with the parties (on an unrelated discovery matter) on December 21, 2020, a full month after the November 18, 2020 order, and Plaintiffs did not mention the document production requests at that time. Plaintiffs' counsel did not alert the court to a continued dispute related to these requests until January 15, 2021. Weary of moderating discovery discussions to no avail, the court directed Plaintiffs' counsel to file a written motion as he deemed appropriate. He did so on January 18, 2021.

In response to Plaintiffs' motion to compel, Defendants filed a cross motion for a protective order and a consolidated brief both in support of the protective order and in opposition to the motion to compel. (Filing Nos. 156 and 157). In their

briefing, Defendants argue that they did timely object to the disputed requests. Defendants also attached a copy of their disputed discovery responses to their motion for the court to review. (Filing No. 156-1).

Now having had the opportunity to review the disputed requests and being fully apprised, it is clear that Defendants served responses to Request Nos. 1, 4, and 5 on Plaintiffs on September 28, 2020. (Id). As is also clear from the evidence attached to Defendants' motion for protective order, Plaintiffs' original requests were served on Defendants on September 1, 2020. Therefore, the September 28, 2020 responses, which appear to have been served both by first-class mail and by email, were properly served and timely. Given the above, the court is perplexed as to basis of Plaintiffs' motion. It appears that Plaintiffs believe that the November 18, 2020 order overruled discovery objections that it did not substantively address and that were not in evidence at the time. That is not the case.

In order to untangle this now, the court will construe Plaintiffs' current motion as a request that the court substantively review the objections raised by Defendants in their September 28, 2020 discovery responses.

　　a. Request Nos. 4 and 5

Defendants objected to Request Nos. 4 and 5 as follows:

REQUEST NO. 4: All personal financial statements filed by the Defendants with any lending institution from 2016-2019.

RESPONSE: Defendants object to this Request. This request appears to ask for personal financial statements of John Bachman and his partners. Such information is not relevant to any of the issues in the case, nor will it lead to relevant evidence in this case. The

13

> financial standing of any equity holders of Leaf Supreme has nothing to do with a wage claim.
>
> REQUEST NO. 5: All statements from any bank, savings and loan, savings institution, stockbroker or any other document filed in conjunction with any personal financial statement from 2016-2019.
>
> RESPONSE: Please see response to Request no. 4.

([Filing No. 156-1 at CM/ECF p. 5](#)). Plaintiffs claim that the foregoing information is relevant because "punitive damages are available pursuant to the FLSA and…the Defendants are liable for these damages." ([Filing No. 159 at CM/ECF p. 2](#)). Plaintiffs' briefing then spends more than ten pages explaining why the FLSA should be construed to provide for punitive damages in certain circumstances and why punitive damages should be available here. Plaintiffs' briefing does not explain why the foregoing discovery requests are relevant to that aim.

On a motion to compel, the moving party must make a threshold showing that the requested information is relevant to the claims or defenses alleged. [ACI Worldwide Corp. v. Mastercard Techs., LLC, 2015 WL 4249760, at *1 (D. Neb. July 13, 2015)](#). If they do so, the burden shifts to the party resisting discovery to prove their objections are valid "by providing specific explanations or factual support as to how each discovery request is improper." [Whittington v. Legent Clearing, LLC, 2011 WL 6122566, * 3 (D. Neb. Dec. 8, 2011)](#).

Courts have differed on the showing necessary to obtain financial statements and tax returns for the purpose of assessing punitive damages. Some courts allow pretrial discovery of financial documents so long as the plaintiff's punitive damage claim "is not spurious." See, e.g., [Krenning v. Hunter Health Clinic, Inc., 166 F.R.D. 33, 34 (D. Kan. 1996)](#). Other courts excuse production of financial and tax documents until the requesting party has established its prima

14

facie case for punitive damages. See, e.g., Johnson v. Con-Vey/Keystone, Inc., 1995 WL 82271 (D. Or. 1995).

Defendants claim that the FLSA does not allow recovery of punitive damages, and that Plaintiffs' claim is spurious as a matter of law. But this court has previously come of an opposite conclusion on that legal question. Knight v. Nash-Finch Co., 2014 WL 12576235, at *4 (D. Neb. Feb. 5, 2014) ("Having reviewed the circuit court decisions and the decisions of other district courts within the Eighth Circuit, the court finds punitive damages are available in FLSA retaliation cases."). That, of course, does not mean that the Eighth Circuit would ultimately agree with that conclusion, if or when it takes up the issue, or that the district judge assigned to this case would agree with the analysis and holding in Knight. The Knight opinion does arise from the District of Nebraska, but the district judge in this case is not bound by that decision. Absent a holding from the circuit, judges within this district are free to arrive at a different outcome. Given the current uncertainly of the law, the undersigned is not prepared to find that Plaintiffs' punitive damages demand is spurious as a matter of law. That said, I am also unwilling to declare that Plaintiffs have made a prima facie case for punitive damages.

Irrespective of whether punitive damages could be awarded, the specific requests for production at issue here are not relevant to that issue. Only the current financial health of Defendants is relevant to the assessment of punitive damages. Vega v. Valley Venture II, 2011 WL 6078158, at *1 (D. Neb. Dec. 7, 2011) ("Past earnings and worth cannot reasonably lead to relevant information on the issue of punitive damages.") (internal citation omitted)); see also Basra v. Ecklund Logistics, Inc., 2016 WL 7413474, at *4 (D. Neb. Dec. 22, 2016) (same). Request Nos. 4 and 5 seek financial statements from 2016 through 2019. Those records do not bear on Defendants' financial health in 2021. Plaintiffs have not shown how the

past financial situation of Defendants is relevant to any claim or defense. Plaintiffs have therefore failed to make a threshold showing that their requests are relevant to this litigation. ACI Worldwide, 2015 WL 4249760, at *1.

b. Request No. 1

Plaintiffs' Request No. 1 asks for "All Federal income tax returns filed by the Defendants from 2016-2018." (Filing No. 151 at CM/ECF p. 2). In response, Defendants state: "Such records will be produced. However, such records have already been provided to Plaintiffs as part of the Declaration of John Bachman (filed in support of Defendant's Motion for Summary Judgment, Ex's. 1-d, 1-E, 1-F)." Thereafter, Defendants made a partial production of the responsive documents. Defendants have produced the responsive tax returns of Defendant Leaf Supreme but not the supporting schedules associated with each Leaf Supreme return. They did not produce Defendant John Bachman's personal income tax returns.

In their briefing, Defendants state that they intended to object to Request No. 1, in part, but misread the request and did not accurately state their objection. (Filing No. 157 at CM/ECF p. 2). In the interim, Defendants served a supplemental objection to Request No. 1, indicating the full scope of records to which they object. Defendants' supplemental response states:

> Defendants object to the production of the personal tax returns of Defendant John Bachman. This request appears to ask for personal financial statements of John Bachman and his partners. Such information is not relevant to any of the issues in the case, nor will it lead to relevant evidence in this case. The financial standing of any equity holders of Leaf Supreme has nothing to do with a wage claim. This objection is consistent with the objections to Requests numbered 4 and 5.

16

(Filing No. 156-1 at CM/ECF pp. 76-77). Plaintiffs now seek an order compelling production of John Bachman's personal income tax returns as well as the supporting schedules filed with Leaf Supreme's responsive returns.

Defendants made a mistake. Their failure to specifically object to Request No. 1 in September 2020 was obviously an oversight, as evidenced by the other objections to production of John Bachman's financial information contained throughout Defendants' discovery responses. But this mistake should be considered in the context of the entire case. This lawsuit has been riddled with excessive motion practice and discovery demands, and within that bombardment, counsel for both parties have made mistakes. As the parties wade through a thicket of motion and discovery practice, dragging the court with them, the court has tried to assess each procedural mistake with an eye toward fostering the purpose of the Federal Rules as enunciated in Rule 1.

> [J]udges . . . must exercise a wise and sound discretion to effectuate the objectives of the simplified procedure. This discretion often must be used to relieve counsel or parties from the consequences of excusable error or neglect. The rules will remain a workable system only as long as trial court judges exercise their discretion intelligently on a case by case basis; the application of arbitrary rules of law to particular situations only will have a debilitating effect on the overall system.

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1029 (4th ed.).

The issue presently before me is defense counsel's mistake in failing to timely object to a single discovery request among many, and that request seeks the personal income tax records of a defendant. Plaintiffs did not raise the alleged waiver of objections during the discovery dispute conference held on December 21, 2020. Given the heightened standard applicable to discovery of personal tax

17

returns, rather than resting its ruling solely on a procedural mistake, the court will, in the interest of justice, consider the merits of Defendants' supplemental albeit untimely objection to this request. Fed. R. Civ. P. 1. To do otherwise would elevate form over substance on a matter deserving of heightened substantive consideration.

A motion to compel production of personal tax returns requires a heightened showing. Flores v. Tyson Foods, Inc., 2013 WL 1091044 at *5 (D. Neb. Mar. 15, 2013). This court applies a two-part test when assessing whether this showing has been met: The court first determines if the moving party has established that the tax returns are relevant to the parties' dispute. If relevancy is shown, the responding parties must produce the returns unless they show there is no compelling need for production of the returns; that is, the relevant information within the returns "is readily obtainable from another source." Home Instead, Inc. v. Florance, No. 8:12CV264, 2013 WL 5979629, at *9 (D. Neb. Nov. 8, 2013) (citing Flores, 2013 WL 1091044 at *5).

The tax information of the individual defendants from 2016 through 2018 is not relevant to Defendants' <u>current</u> financial position. Thus, those documents have no bearing on assessment of Plaintiffs' alleged punitive damages. Basra, 2016 WL 7413474, at *4. That reasoning applies to both John Bachman's personal returns as well as the Leaf Supreme's supporting schedules.

Plaintiffs argue the tax documents are also relevant to show how much control John Bachman exercised over the business operations of Leaf Supreme. Plaintiffs argue that John Bachman's tax records could indicate that he took a tax deduction related to business losses incurred by Leaf Supreme. (Filing No. 159). Plaintiffs claim that if John Bachman did in fact claim such a deduction, he would have had to certify to the Internal Revenue Service that he had participated in the

business operation of Leaf Supreme during the taxable year in which the deduction was taken. (Id). In Plaintiffs' view, if the deduction was taken, that evidence would undermine John Bachman's contention that he was not involved in the business. In other words, Plaintiffs want the entirety of John Bachman's tax returns to look for one entry—whether a particular tax deduction was claimed.

The court will not allow Plaintiffs to delve into John Bachman's personal tax return information simply because Plaintiffs think John Bachman might have taken a certain deduction. Ordering production of the entire tax returns to look for a single deduction entry is disproportionate to the needs of the case, particularly since Plaintiffs can obtain information on whether John Bachman was involved in the business operations of Leaf Supreme through testimony or other evidence without prying into the entirety of John Bachman's tax returns.

Plaintiffs have not made the required showing that production of John Bachman's tax information is necessary. They have not met their burden to compel a response to any of the disputed requests, and Plaintiffs' motion to compel will be denied.[6] A contrary ruling would be inconsistent with the overarching principles of Rule 1.

As a final note, this lawsuit among family members has quickly degenerated. It has become a spitting match, with duplicative and unnecessary motion practice and discovery disputes that seemingly cannot be resolved, even in part, through good faith discussion. The parties might jointly desire this type of litigation, but the public interest does not allow it. "The public interest demands a seemly and efficient use of judicial resources towards the just, speedy, and inexpensive remedy spoken for in Fed.R.Civ.P. 1." Gen. Mill Supply Co. v. SCA Servs., Inc.,

---

[6] Because the court will deny Plaintiffs' motion to compel in its entirety, the court will deny Defendants' motion for protective order as moot. The two motions request mirror-image relief.

697 F.2d 704, 711 (6th Cir. 1982). The failure to do so raises "ethical problems involving danger to a just, speedy, and inexpensive remedy" that the court can and should raise, sua sponte, if appropriate. Id.

Accordingly, IT IS ORDERED:

1) Plaintiffs' Motion to Compel (Filing No. 151) is denied;

2) Plaintiffs' Motion for Extension of Time to File a Responsive Pleading (Filing No. 153) is denied as moot;

3) Plaintiffs' Motion to Amend the Complaint (Filing No. 154) is denied;

4) Defendants' Motion for a Protective Order (Filing No. 156) is denied as moot;

5) Defendants' Motion to Strike Plaintiffs' Answer to the Counterclaim (Filing No. 162) is granted. Paragraphs 1-25 of Plaintiffs' Answer to the Counterclaim are hereby stricken from the record and will not be considered part of the pleadings;

6) The parties' joint stipulation on attorneys' fees (Filing No. 165) is approved; and

7) Plaintiffs' duplicate motion to compel (Filing No. 166) is denied.

Dated this 19th day of March, 2021.

                        BY THE COURT:

                        *s/ Cheryl R. Zwart*
                        United States Magistrate Judge